UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD J. MULLEN,           )
                             )
        Plaintiff            )
                             )
v.                           )    No. 2:13-cv-174-GZS
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security,[1] )
                             )
        Defendant            )

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge failed to follow the "treating source" rule in assessing an opinion of Daniel Loiselle, M.D., and minimized the plaintiff's subjective complaints of pain and agoraphobia with panic attacks, as a result of which his residual functional capacity ("RFC") determination is unsupported by substantial evidence. *See* Statement of Errors (ECF No. 10) at 1-2. I find no error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2013, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 22; that he had severe impairments of residuals of congenital aortic stenosis, sarcoidosis with reasonably normal pulmonary function tests, degenerative disc disease of the lumbar spine with mechanical back pain complicated by obesity, anxiety-related disorder/anxiety not otherwise specified, and substance addiction disorder/cannabis dependence, Finding 3, *id.* at 23; that he retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[3] except that he was limited to standing or walking for two hours and sitting for six hours total in an eight-hour workday, could never climb ladders, ropes, or scaffolds, had to avoid sharp objects, moving machinery, irregular terrain, or hard surfaces such as concrete, was limited to understanding and remembering simple to modestly detailed instructions and executing simple to modestly detailed tasks on a consistent schedule to complete a workday/workweek, could have occasional interaction with coworkers and supervisors and no interaction with the public, and was limited to adapting to simple, routine changes in the workplace, Finding 5, *id.* at 25; that, considering his age (40 years old, defined as a younger individual, on his alleged disability onset date, February 16, 2009), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 30; and that he, therefore, was not disabled from February 16, 2009, his alleged date of onset of disability, through the date of the decision, April 17, 2012, Finding 11, *id.* at 31. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[3] The administrative law judge mistakenly cited subsection (a), which pertains to sedentary work. Nothing turns on the error.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

Dr. Loiselle, the plaintiff's primary care physician for more than 10 years, completed a mental impairment questionnaire dated February 23, 2012, in which he indicated that the plaintiff's panic disorder with agoraphobia seriously limited his aptitudes in most work-related functions and rendered him unable to meet competitive standards in the remainder. *See* Record at 634-35. He found that the plaintiff was markedly limited in activities of daily living, social functioning, and concentration, persistence, or pace and had experienced one or two episodes of decompensation of at least two weeks' duration. *See id*. at 636. He stated that the plaintiff had a "complete inability to function independently outside the area of [his] home" and would miss

3

work, on average, more than four days per month as a result of his impairments or treatment. *Id*. at 636-37 (emphasis omitted).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the question of a claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id*. §§ 404.1527(d)(2)-(3), 416.927(d)(2)-(3); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id*. ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e*., whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The administrative law judge gave "little weight" to the Loiselle opinion for two reasons: (i) it was premised on the plaintiff's subjective statements, which the administrative law judge did not credit, and (ii) it was unsupported by treatment records and the majority of the evidence of record. *See* Record at 28.

The plaintiff argues that neither of these points survives scrutiny and that the administrative law judge's findings of only mild restrictions of activities of daily living and moderate difficulties with social functioning are unsupported by any medical opinion of record. *See* Statement of Errors at 5-8. He suggests that these errors, in turn, undermined the administrative law judge's RFC determination, noting that the vocational expert present at his hearing testified that an absentee rate of more than four days per month (as found by Dr. Loiselle) would preclude employment at the unskilled level. *See id*. at 8; Record at 81-82.

The commissioner rejoins that the administrative law judge properly handled the Loiselle opinion, made a supportable credibility determination, and relied on medical opinions of record in determining the extent of the plaintiff's restrictions of activities of daily living and social functioning. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 20) at 3-9. The commissioner has the better argument.

## A. Inconsistency with Other Evidence of Record

The plaintiff contends that the Loiselle opinion is consistent with the evidence of record, which reveals that:

1. Beginning in approximately 2006, Dr. Loiselle treated him on a regular basis for generalized anxiety disorder, prescribing medication and referring him to a psychiatrist when his symptoms worsened. *See* Statement of Errors at 5.

2. Psychiatrist Cindy Boyack, M.D., diagnosed him with panic disorder with agoraphobia, assigned him a Global Assessment of Functioning ("GAF") score of 45, and recommended counseling. *See id.*[5]

3. He tried counseling but did not find it to be that helpful. *See id.*

Nonetheless, as the commissioner notes, *see* Opposition at 3-6, and the administrative law judge found, *see* Record at 26-29, the record contains considerable evidence that the plaintiff's mental impairments had substantially less impact on his ability to work than found by Dr. Loiselle. For example:

1. Dr. Loiselle's progress notes and other record evidence indicate that the plaintiff's anxiety did not significantly impair his ability to work, and that he stopped working in February 2009 because his employer ceased business. *See id.* at 47 (testimony by plaintiff that he stopped work in February 2009 "when they closed the place down"), 328, 334 (notations by Dr. Loiselle on January 16, 2009, and October 23, 2008, that plaintiff's baseline anxiety was "OK" and he

---

[5] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM–IV-TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34 (boldface omitted).

6

was busy at work), 437 (notation by Disability Determination Services ("DDS") examining consultant Roger Ginn, Ph.D., on November 16, 2010, that "when [the plaintiff] did work he usually got along well with people, and at [the] time he was terminated from his last job . . . he was not really having any problems with the job").

2. The plaintiff's anxiety flared after he lost his job in February 2009. *See id.* at 325 (notation by Dr. Loiselle on May 20, 2009, that plaintiff's anxiety "recently flared after losing his job, leading [to] worsening financial difficulties"). Although, more than a year later, on March 1, 2010, the plaintiff reported to Dr. Loiselle that his baseline anxiety was "out of control" and that he could not deal with the public, work, or find a job because of his anxiety, *see id.* at 319 (internal quotation marks omitted), he did find a job shortly thereafter working for Midas, *see id.* at 44. He testified that he was let go from Midas because "[t]hey said they wanted more of a manager person to be working with people at the counter, and I don't work very good with people, you know, with having my panic attacks and stuff." *Id.* However, on May 28, 2010, while he was still working for Midas, he complained to Dr. Loiselle about physical problems from standing on the concrete floor but made no mention of any anxiety or agoraphobia problems stemming from the job. *See id.* at 317.

3. The plaintiff's anxiety seemingly was exacerbated primarily by contact with crowds, in particular, by shopping. *See id.* at 262 (notation by DDS examining consultant Albert Shems, M.D., on June 16, 2010, that "[t]he main problem that bothers him is the anxiety when he goes shopping mostly"), 314 (notation by Dr. Loiselle on July 16, 2010, that the plaintiff was having a difficult time getting out of the house and was "avoid[ing] food shopping, crowds, and anything that is 'new'"), 438 (conclusion by Dr. Ginn on November 16, 2010, that, if the

7

plaintiff could find a job, "he could get along adequately with people and deal with the usual work-related stress").

4. Although, in October 2010, Dr. Loiselle noted that the plaintiff continued to struggle with anxiety and that he (Dr. Loiselle) supported his application for disability benefits, he also noted that the plaintiff was able to look for four jobs per week, pick up his daughter, and do errands during off hours when there were fewer people in the stores. *See id.* at 571-72.

5. Although, on July 8, 2011, Dr. Boyack assessed the plaintiff with a GAF score of 45, she diagnosed him with cannabis dependence, which she noted was a "complicating" factor for his panic disorder with agoraphobia. *Id.* at 540. In addition, while the plaintiff told Dr. Boyack that he was unsure of his ability to work hard enough to be a mechanic, he acknowledged that he was mechanically inclined and that another job in that field would be possible. *See id.* In any event, "[a] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions." *LaFontaine v. Astrue,* No. 1:10–cv–527–JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) (rec. dec, *aff'd* Oct. 13, 2011).

6. Dr. Boyack advised the plaintiff that marijuana made anxiety worse and recommended marijuana cessation, in addition to an increase in paroxetine, with a change to a different medication if that proved ineffective, and psychotherapy. *See* Record at 541. As of October 2011, the plaintiff reported that psychotherapy did not help much; however, Dr. Loiselle noted that he was still in the process of minimizing marijuana use, pursuing weekly counseling, and continuing medications. *See id.* at 543-44.

For all of these reasons, the administrative law judge supportably concluded that the Loiselle opinion was inconsistent with both Dr. Loiselle's own progress notes and other evidence

of record. That, in turn, constituted a good reason to accord the opinion little weight, satisfying the requirements of the "treating source" rule.[6]

Moreover, as the commissioner points out, *see* Opposition at 8-9, the administrative law judge's findings were not unsupported by medical opinion evidence. Agency nonexamning consultant Brian Stahl, Ph.D., found that the plaintiff was only mildly restricted in activities of daily living and moderately limited in social functioning. *See* Record at 254. In adopting those findings, the administrative law judge implicitly rejected the less plaintiff-friendly opinion of a second agency nonexamining consultant, Brenda Sawyer, Ph.D., who found that the plaintiff had only mild difficulties in social functioning and no restrictions in his activities of daily living. *See id*. at 449. This materially distinguishes this case from *Strawhacker v. Apfel*, 17 F. Supp.2d 880 (S.D. Iowa 1998), cited by the plaintiff's counsel at oral argument in support of the proposition that an administrative law judge cannot rest an RFC determination upon an adverse credibility

---

[6] At oral argument, the plaintiff's counsel contended that the records reveal that his client's condition worsened markedly in 2011, and that the administrative law judge failed to consider whether he had become disabled as of the time of the decision. Although the plaintiff noted in his statement of errors that, after he became unemployed in 2009, his anxiety became progressively worse, he did not contend that there was a failure to consider whether he had become disabled as of the date of the decision. *See* Statement of Errors at 3. Hence, the point is waived. *See, e.g., Farrin v. Barnhart,* No. 05–144–PH, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, even if not waived, the argument is not outcome-determinative. In support of this point, the plaintiff's counsel cited an October 7, 2011, progress note of Dr. Loiselle, *see* Record at 543-45, an August 9, 2011, psychiatric evaluation by Heidi Drew, N.P., *see id*. at 606-08, a July 13, 2011, clinical assessment by Donna Waterman, LCSW, *see id*. at 609-11, and notes of the July 8, 2011, consultation with Dr. Boyack, *see id*. at 538-41. He noted that one or more of those providers diagnosed the plaintiff with panic disorder with agoraphobia and/or depressive disorder and GAF scores in the 45 to 50 range, representing serious symptoms. As counsel for the commissioner rejoined, while there are some objective findings noted, these assessments appear to be based in large part on the plaintiff's subjective reports. For example, as she pointed out, Dr. Boyack observed that there was "no psychomotor agitation or retardation and no fidgetiness, which was surprising, given [the plaintiff's] apprehension about coming here today." *Id*. at 540. In addition, as the administrative law judge noted, the plaintiff told Dr. Boyack that another job in the auto mechanic field "would be possible[,]" *id*. at 27 (quoting Record at 540), and mentioned to Ms. Drew that he thought seeking out help from mental health professionals "would help him get his disability[,]" *id*. at 27 (quoting Record at 606). The administrative law judge reasonably deemed the longitudinal evidence as a whole, including the 2011 records, largely inconsistent with the Loiselle opinion.

9

finding. *See Strawhacker*, 17 F. Supp.2d at 885 ("A credibility finding is not equivalent to proving residual functional capacity with medical evidence.").

### B. Lack of Credibility re: Claimed Symptoms

The plaintiff next contends that the administrative law judge improperly minimized his subjective complaints, wrongly rejecting the Loiselle opinion in part on the basis that it was premised on the discredited allegations. *See* Statement of Errors at 6-7.

The administrative law judge deemed the plaintiff "minimally credible[,]" explaining:

> The [plaintiff] denied work activity after 2010. However, the records indicate a different picture. In February 2011, the [plaintiff] reported to his cardiologist, James Powers, M.D., that he had been working part-time for a snow removal company. This included driving a plow truck and snow blowing. He had no symptoms of chest pain with snow blowing. There is evidence that the [plaintiff] has misrepresented facts relevant to the issue of disability. The [plaintiff] denied working part-time for a snow removal company at the hearing and insisted that he only plowed his driveway and a friend's driveway. Furthermore, despite allegations of agoraphobia, the [plaintiff] is able to drive alone and leave the house frequently to attend multiple medical appointments without any mention in the medical records regarding heightened symptoms of anxiety. He left his job at Midas in 2010 after complaining about concrete floors, but not about anxiety interfering with his ability to do the job. The undersigned notes that the [plaintiff] attends various doctors' appointments some distance from his house without evidence of frequent cancellations or "no shows." Contrary to the [plaintiff's] testimony, the records do not support the frequency of urination or diarrhea from anxiety.
>
> Lastly, in December 2008, the [plaintiff] was admitted to the emergency room at Maine Medical Center for falling and reported that he had no history of drug, alcohol or tobacco use. This is contrary to the medical evidence of record that documents frequent marijuana use. This does not enhance the [plaintiff's] credibility.

Record at 26-27 (citation omitted).

The administrative law judge further noted that the plaintiff reported to Dr. Boyack in July 2011 that he was mechanically inclined and that another job in the auto mechanic field "would be possible" and that he stated during an August 2011 psychiatric evaluation that he had

10

not sought help from mental health professionals, intended to do so, and "thought that would help him get his disability." *Id*. at 27 (citations and internal quotation marks omitted). The administrative law judge stated that this also "t[ook] away from the [plaintiff's] credibility." *Id*.

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

The plaintiff challenges the administrative law judge's characterization of the Loiselle opinion as having being premised solely on his subjective statements, asserting that Dr. Loiselle also had the benefit of the records of Dr. Boyack and other treating mental health providers. *See* Statement of Errors at 6. He adds that, in deeming him minimally credible, the administrative law judge failed to take into account his explanations at hearing that (i) he plowed and did snow-blowing work only in his yard and that of a friend, (ii) he could attend many of his medical appointments without exhibiting heightened symptoms of anxiety because, for the sake of his young daughter, he needed to stay as healthy as he could, and (iii) he does have increased anxiety when he leaves his house to attend the appointments, but he knows the doctors and finds it easier to be around them. *See id*. at 6-7.

With respect to the first point, as the commissioner observes, *see* Opposition at 5, the administrative law judge reviewed the records of other treatment providers, including Dr. Boyack, but supportably concluded that they, too, were inconsistent with the Loiselle opinion.

With respect to the second point, the commissioner correctly notes that the administrative law judge was not required to accept at face value the explanations that the plaintiff offered at hearing for the seeming inconsistencies pointed out to him by the administrative law judge. *See*

11

*id.* at 7-8. Treating cardiologist James B. Powers, M.D., had stated in his notes of a February 3, 2011, visit that the plaintiff had "been working part-time for a snow removal company[,]" including "driving a plow truck and snow blowing[,]" had "had no symptoms of chest pain with snow blowing" and became mildly short of breath "[s]ometimes when he is 'working really hard[.]'" *Id*. at 529. The plaintiff flatly denied that he had done any such part-time work, testifying that he only plowed and did snow-blowing work in his own yard and that of a friend. *See id*. at 44-45. Either Dr. Powers or the plaintiff had it wrong. As the commissioner notes, *see* Opposition at 8, this was a classic conflict in the evidence that it was within the purview of the administrative law judge to resolve, *see, e.g., Rodriguez,* 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the administrative law judge], not for the doctors or for the courts.").

For the same reason, the administrative law judge properly resolved a seeming conflict between the assertion by the plaintiff (and Dr. Loiselle) that his condition kept him essentially housebound and his ability to attend multiple medical appointments without indicia of anxiety.[7]

Beyond this, the administrative law judge made other specific findings in support of his credibility determination that the plaintiff does not challenge, for example, that the plaintiff falsely reported to Maine Medical Center providers that he had no history of drug use.

At oral argument, the plaintiff's counsel made additional arguments pertaining to Dr. Loiselle's reliance on the plaintiff's subjective statements that are not contained in the statement of errors and, therefore, are waived. *See, e.g., Farrin*, 2006 WL 549376, at *5.

---

[7] At oral argument, the plaintiff's counsel also took issue with the administrative law judge's finding that the plaintiff left his job at Midas in 2010 after complaining about concrete floors but not about anxiety interfering with his ability to do the job. He stated that no one asked the plaintiff about anxiety and pointed out that, at hearing, the plaintiff testified that he left Midas because "[t]hey said they wanted more of a manager person to be working with people at the counter, and I don't work very good with people[.]" Record at 44. As counsel for the commissioner noted at oral argument, competing inferences can be drawn from the evidence. The administrative law judge drew a reasonable inference, from the fact that the plaintiff complained to Dr. Loiselle about standing on concrete floors at Midas but not about anxiety on that job, that he did not have a significant problem with anxiety there.

12

Nonetheless, even had they not been waived, these new arguments would not be outcome-determinative:

1. That the administrative law judge erred in characterizing Dr. Loiselle as having premised his opinion on the plaintiff's subjective statements regarding his symptoms. *See* Record at 28. In fact, Dr. Loiselle checked boxes indicating that his opinion was based at least in part on observable signs and symptoms such as psychomotor agitation and easy distractibility. *See id.* at 633. Yet, as counsel for the commissioner noted at oral argument, Dr. Loiselle did base his opinion at least in part on the plaintiff's subjective statements. In addition, the administrative law judge separately provided good reason for discounting the opinion: that it was inconsistent with other evidence of record. Accordingly, the error was harmless.

2. That, in any event, as a matter of law, the administrative law judge improperly rejected the Loiselle opinion on the basis that it relied on the plaintiff's subjective statements. The plaintiff's counsel cited section 12.00(D)(1)(b) of the Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listings"), for the proposition that the commissioner's regulations recognize the appropriateness of reliance on a patient's subjective statements in treating mental health disorders. *See* Listings § 12.00(D)(1)(b) ("Individuals with mental impairments can often provide accurate descriptions of their limitations. The presence of a mental impairment does not automatically rule you out as a reliable source of information about your own functional limitations. When you have a mental impairment and are willing and able to describe your limitations, we will try to obtain such information from you."). He reasoned that the administrative law judge could not validly discredit the Loiselle opinion on the basis of Dr. Loiselle's permissible reliance on the plaintiff's subjective statements.

While it is indeed appropriate for a treating source to rely on subjective statements in addressing mental health disorders, nothing in section 12.00(D)(1)(b) prevents an administrative law judge from discrediting a treating source's mental RFC opinion to the extent that it relies on subjective statements deemed not to be fully credible.  Indeed, section 12.00(D)(1)(b) recognizes, "[Y]ou may not be willing or able to fully or accurately describe the limitations resulting from your impairment(s).  Thus, we will carefully examine the statements you provide to determine if they are consistent with the information about, or general pattern of, the impairment as described by the medical and other evidence[.]"  Listings § 12.00(D)(1)(b).

For all of these reasons, there is no basis on which to disturb the administrative law judge's credibility finding.  *See, e.g., Frustaglia,* 829 F.2d at 195.  It follows that the administrative law judge did not run afoul of the "treating source" rule in according little weight to the Loiselle opinion on the basis that Dr. Loiselle relied on the plaintiff's discredited subjective allegations.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge